UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAMON STEWART, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) |
| | ) 3:20-CV-2542-G |
| MUTUAL OF OMAHA INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Mutual of Omaha Insurance Company ("Mutual of Omaha")'s motion for summary judgment. Defendant's Motion for Summary Judgment (docket entry 14) ("motion for summary judgment"). For the reasons set forth below, the motion for summary judgment is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

This suit arises out of a dispute between Damon Stewart, Dekeitric Holley, and Charles Stewart (collectively, "the plaintiffs") and Mutual of Omaha regarding an accidental death insurance policy covering Burtis Holley, Jr. ("the Insured").[1]

---

[1] The plaintiffs are heirs of the original plaintiff, Johnette Stewart Holley ("Ms. Stewart Holley"), who passed away during the pendency of this suit. Second Amended Complaint ("SAC") ¶¶ 14-16. On March 26, 2021, the court granted (docket entry 26) the plaintiffs' Motion to Substitute Parties and Amend Pleadings

Defendant's Brief in Support of Its Motion for Summary Judgment (docket entry 15) ("Brief in Support") ¶ 1.  In December 2016, the Insured applied for, and Mutual of Omaha issued, Accidental Death Policy No. 784200-92 ("the Policy").  *Id.* ¶¶ 4-5. The Policy provided coverage of $250,000 and designated the Insured's wife, Ms. Stewart Holley, as the beneficiary.  *Id.* ¶ 4; Appendix in Support of Defendant's Motion for Summary Judgment ("APP.") (docket entry 16) at 1.

Under the Policy, Mutual of Omaha agreed to a payout "[i]f, while insured under this policy, an *insured person* sustains an *injury* which results in death within 365 days following the date of the *injury* . . . ."  APP. at 7 (emphasis in original).  The Policy defines an "Injury" as "bodily harm which (a) is the direct result of an accident or trauma that occurs while [the] policy is in force; and (b) results in loss independently of sickness and all other causes (except for sickness caused by the injury)."  *Id.*  The Policy also specifically excludes from coverage "death resulting directly or indirectly from disease or bodily infirmity."  *Id.* at 10.  The former is known as a "sole cause" clause; the latter as an "exclusionary" clause.

On September 9, 2019, while the Policy was still in effect, the Insured was alone in the bathroom of a hotel room in which he and Ms. Stewart Holley were staying.  APP. at 30, 34.  Ms. Stewart Holley "heard a loud thud" come from the

---

(docket entry 24), allowing Ms. Stewart Holley's heirs to continue the suit in her stead.

- 2 -

bathroom and went in to find the Insured unresponsive on the floor. *Id.* Ms. Stewart Holley called paramedics, who determined that the Insured had no pulse and subsequently performed chest compressions. *Id.* at 34. The Insured was pronounced dead at the scene. *Id.* at 41.

The plaintiffs allege that the Insured "accidentally fell and hit his head resulting in his death." SAC ¶ 10; APP. at 25 (a claim statement filed by Ms. Holley Stewart stating that her "spouse fell in the restroom while going to take a shower and passed away" and noting "[b]ruising on [the right side of the Insured's] forehead"). The plaintiffs attached two photographs of the Insured taken by one of the plaintiffs showing an injury on the right forehead. Brief in Support of Plaintiffs' Response to Defendant's Motion for Summary Judgement ("Response") (docket entry 32) at 3, Exhibit D. However, the Certificate of Death for the Insured issued by the State of New Mexico states that the "cause of death" was "[a]therosclerotic and hypertensive cardiovascular disease." APP. at 17. The Certificate of Death also noted "[m]orbid obesity" as an other "significant condition[] contributing to death." *Id.* The Certificate of Death made no mention of head trauma as a contributing cause of death. No autopsy was performed. Response at 3.

On October 29, 2019, Ms. Stewart Holley submitted an "Accidental Death Claim Statement for Beneficiaries" seeking the full amount of coverage provided by the Policy. APP. at 25. "After receiving the Claim, Mutual of Omaha commenced a

routine investigation." Brief in Support ¶ 14. Mutual of Omaha obtained a police "Incident Report," APP. at 29-31, a medical investigator report, *id.* at 32-34, an emergency response report completed by emergency response personnel, *id.* at 36-39, and a physician review, *id.* at 40-42. Neither the police report, the medical investigator report, nor the emergency response report note any head trauma suffered by the Insured or that such trauma was the cause of death. Dr. Cline-Parhamovich, the medical investigator, identified the cause of death as "[a]therosclerotic and hypertensive cardiovascular disease" with "[m]orbid obesity" as a "significant contributory condition," and that the Insured's death was "[n]atural." *Id.* at 35. Dr. Stuart Schlanger, the reviewing physician, concluded the Insured, "with a very high probability[,] suffered an out of hospital cardiac arrest" and "almost certainly fell after the cardiac arrest." *Id.* at 41. Dr. Schlanger also concluded that "there was no accidental bodily injury which caused or contributed to the insurer's [sic] demise." *Id.* Rather, the Insured's "underlying atherosclerotic vascular disease" and "morbid obesity" "directly contributed to [the Insured's] out of hospital cardiac arrest." *Id.*

On April 11, 2020, Mutual of Omaha notified Ms. Stewart Holley ("the Decision Letter") that her claim for the Policy's death benefit payment had been denied. Brief in Support ¶ 20; APP. at 43-44. The Decision Letter noted that the Insured's death was caused by "atherosclerotic and hypertensive cardiovascular disease," factors which fall outside the scope of "injury" as defined in the Policy. *Id.*

at 47.

B. Procedural History

Ms. Stewart Holley filed her Plaintiff's Original Petition in state court on August 3, 2020. (docket entry 1-1, Exhibit A). Mutual of Omaha filed its Notice of Removal on August 27, 2020. (docket entry 1). Mutual of Omaha filed its motion for summary judgment on January 27, 2021. After Ms. Stewart Holley passed away, the court granted the plaintiffs' Motion to Substitute Party and Amend Complaint on March 26, 2021. On the same day, the plaintiffs filed their Second Amended Complaint, which omitted several of the claims brought in Ms. Stewart Holley's previous complaints. Mutual of Omaha also filed its answer on March 26, 2021. Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint (docket entry 28) ("Answer").[2] The plaintiffs filed their response to Mutual of Omaha's motion for summary judgment on April 7, 2021. Brief in Support of Plaintiffs' Response to Defendant's Motion for Summary Judgement (docket entry 32) ("Response"). Mutual of Omaha filed its reply on April 8, 2021.

---

[2] Rather than file a second motion for summary judgment corresponding to the plaintiffs' Second Amended Complaint, Mutual of Omaha filed a Supplement to Defendant's Motion for Summary Judgment (docket entry 29) wherein it argued that "[t]he arguments and issues raised in the [motion for summary judgment] are not mooted by the Second Amended Complaint, and the [motion for summary judgment] does not require amendment or supplementation beyond the references to the recent procedural developments articulated herein." *Id.* ¶ 8. Mutual of Omaha urges the court to ignore the portions of its motion for summary judgment relating to claims that were omitted in the Second Amended Complaint. *Id.* ¶ 7.

Defendant's Reply in Support of its Motion for Summary Judgment (docket entry 33) ("Reply"). Accordingly, Mutual of Omaha's motion for summary judgment is ripe for decision.

## II. ANALYSIS

### A. Legal Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.[3] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The

---

[3] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 291 U.S. 253, 288-89 (1986)). When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id*. However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue of material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353, F.3d at 405.

B. <u>Application</u>

In their Second Amended Complaint, the plaintiffs allege that Mutual of Omaha (1) breached its contract with the Stewart Holleys by declining to cover the Insured's death and (2) violated the Prompt Payment of Claims Act, TEX. INS. CODE § 542.058, by failing to provide timely payout under the Policy. SAC ¶¶ 17-26. Mutual of Omaha contends that it is not in breach because the Insured's death does not satisfy the standard of "accidental death" as set forth in the Policy. Reply ¶ 15.

Mutual of Omaha also argues that, because the Prompt Payment of Claims Act only applies when a beneficiary is entitled to a payout under an insurance policy, the plaintiffs' second claim also fails for the same reason. Brief in Support ¶¶ 39-40. Mutual of Omaha is correct on both counts.

The court resolves Mutual of Omaha's motion to strike the photographs of the Insured before reaching the merits of the plaintiffs' claims.

### 1. Evidentiary Matters

Mutual of Omaha requests that the court strike the photographs of the Insured's body showing an injury on the right side of his face. *See* Reply ¶¶ 1-2; Response at Exhibit D. Mutual of Omaha argues that the photographs fail to comply with FED. R. EVID. 901 because the photographs "lack authentication." Reply ¶ 1.[4] Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). The proponent may, for example, provide testimony that the "item is what it is claimed to be." FED. R. EVID. 901(b)(1). "The standard for authentication is not a burdensome one," *United States v. Jackson*, 636 F.3d 687, 693 (5th Cir. 2011) (citations omitted), because courts need not "require conclusive proof of authenticity

---

[4] Mutual of Omaha also argues that the photographs "constitute hearsay," Reply ¶ 1, but fails to explain the reasoning behind this claim in any detail. Accordingly, the court does not consider this argument.

before allowing the admission of disputed evidence." *United States v. Watkins*, 591 F.3d 780, 787 (5th Cir. 2009). In particular, "[a] photograph can be authenticated by someone other than the photographer if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *United States v. Winters*, 530 Fed. App'x. 390, 395 (5th Cir. 2013) (quotations and citation omitted)

Mutual of Omaha is correct that the plaintiffs have not authenticated the photographs. The plaintiffs did not provide an affidavit by the individual who took the pictures or by anyone with personal knowledge of the "object" of the photograph. In fact, the plaintiffs fail to even identify who took the photograph, only that one of the Insured's sons took the pictures. *See* Response at 3. To be clear, the plaintiffs need not demonstrate the ultimate admissibility of the photographs at this stage. Rather, the plaintiffs' sole obligation was to provide some indicia of the photographs' potential admissibility through an affidavit or the like. But the plaintiffs failed to satisfy even this simple obligation. Accordingly, the court will not consider the photographs submitted in the plaintiffs' Response as Exhibit D.[5]

## 2. Breach of Contract

Under Texas law, to establish a claim for breach of contract a plaintiff must

---

[5] As discussed below, the result of this decision would not change even if the court considered the photographs.

show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). The first two elements of the breach are uncontested by the parties. *See* Answer ¶ 19. Accordingly, only the latter two arguments are disputed.

Before considering each party's arguments, a word must be given on the plaintiffs' burdens to show a breach under the Policy. The Policy contains both a "sole cause" clause and an "exclusionary" clause. *See* APP. at 7, 10. Under the sole cause clause, an injury (which "is the direct result of an accident or trauma") must "result in loss *independently* of sickness and all other causes." *Id.* at 7 (emphasis added). Under the exclusionary clause, the Policy explicitly bars coverage for "death resulting directly or indirectly from disease or bodily infirmity." *Id.* at 10. Under such clauses, "the burden [is] on the insured to prove that the loss in question was caused by an accidental bodily injury directly and independently of all other causes." *JCPenny Life Insurance Company v. Baker*, 33 S.W.3d 417, 421 (Tex. App. – Fort Worth, 2000, no pet.) (citations omitted). However, insurers are "required to both plead and prove the applicability of an exclusion." *Telepak v. United States Automobile Association*, 887 S.W.2d 506, 507 (Tex. App. – San Antonio 1994, writ denied) (citations omitted); *See* TEX. INS. CODE § 554.002 ("In a suit to recover under an insurance . . . contract, the insurer . . . has the burden of proof as to any avoidance or

affirmative defense . . . . Language of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense."). "Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion." *Guaranty National Insurance Company v. Vic Manufacturing Company*, 143 F.3d 192, 193 (5th Cir. 1998).

"'Independent' as used in the [sole cause] clause means 'solely,' 'only,' and 'standing alone.'" *Baker*, 33 S.W.3d at 421 (citing *Stroburg v. Insurance Company of North America*, 464 S.W.2d 827, 829 (Tex. 1971)). "Thus, a coverage clause of this type limits recovery to accidental bodily injuries that are the sole cause of death." *Id.*; *Mutual Benefit Health & Accident Association v. Hudman*, 398 S.W.2d 110, 112-13 (Tex. 1965).[6] However, "recovery is not defeated when a preexisting condition or disorder is so remote in the scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury."

---

[6] The rule as set forth in 10 COUCH ON INSURANCE § 141:30 sums up case law on the subject:

> Accordingly, if death is caused by the concurring action of the injury and a preexisting disease, or, in other words, if a disease preexisting at the time of the accidental injury is aggravated thereby, or the disease aggravates the effects of the accident and actively contributes to the ensuing disability or consequent death, recovery is precluded under a clause limiting the insurer's liability to disability or death resulting, independently of all other causes, from accidental injuries, and stipulating that there shall be no recovery if death results wholly or in part, directly or indirectly, from disease or bodily infirmity.

*Stroburg*, 464 S.W.2d at 829 (alterations omitted).

A "sole cause" of death differs from a "proximate cause" of death in that the latter may join with another cause to result in death, whereas the former must itself alone result in death. In *Hudman*, for example, the Texas Supreme Court considered whether an insurer was liable under an accident insurance policy which covered accidental deaths which occur "independently of other causes." 398 S.W.2d at 111. Hudman "died in his pickup truck of ventricular fibrillation after he had worked hard on a hot day that was marked by extreme fluctuations in humidity." *Id.* The evidence showed "that Hudman died from the effects of two concurring causes": "Hudman's overexertion and his diseased heart." *Id.* The Texas Supreme Court held that the beneficiary could not recover under the accident policy because "two causes proximately concurred to produce death and the policy limited its coverage to one cause, accidental bodily injury." *Id.* at 113. The *Hudman* court rejected the beneficiary's argument that "overexertion (the accidental bodily injury), though dependent upon heart disease (the other cause) was yet 'independent of other causes.' . . . An independent cause does not mean that it is a joint, contributing, or concurring cause." *Id.*[7]

---

[7] In a case quite similar to the one at bar, the Supreme Court of Maine considered a similar "sole cause" clause. *Knowlton v. John Hancock Mutual Life Insurance Company*, 146 Me. 220, 221-22 (1951). There the deceased died from injuries sustained from a fall. *Id.* at 224-25. The fall, in turn, was caused by convulsions resulting from chronic alcoholism. *Id.* The *Knowlton* court concluded that when "a

In sum, therefore, the plaintiffs must demonstrate that (1) the fall at least proximately caused the Insured's death, and (2) the fall was not itself caused by a disease. The plaintiffs fail to show that the fall was the sole or even proximate cause of death. The court need not address Mutual of Omaha's alternative argument that the illness exclusion applies.

### a. Causation

The plaintiffs have not demonstrated a genuine issue of material fact that the fall proximately caused the Insured's death. The only evidence tending to establish this causal relationship is that Ms. Stewart Holley heard a "thud" come from the bathroom and that the Insured had "[b]ruising on forehead right side." Response at 3. But the plaintiffs provide no evidence, affidavits, or the like even suggesting that the Insured's fall and resulting bruising was sufficient to kill the Insured. None of the entities that reviewed the Insured's death – the Albuquerque Police Department, medical investigator Dr. Karen Cline-Parhamovich, emergency response personnel, or reviewing physician Dr. Stuart Schlanger – concluded that the fall and resulting bruising caused the Insured's death. Indeed, the plaintiffs admitted that they had no documents or records demonstrating that the Insured's death was the result of a fall

---

fall [that] produces injuries which in turn cause death, and such [a] fall is caused by disease, the death results at least indirectly from the disease which causes the fall." *Id.* at 226. The court there relied on the maxim that "the cause of the thing causing is the cause of the effect." *Id.* Based on that principle, the court held that the policy did not cover the insured's death.

or his head injuries. Brief in Support at 3-4; APP. at 24. Nor had any "medical professional" or "medical examiner" concluded that the Insured died as a result of head injuries or a fall. *Id.* Even more, reviewing physician Dr. Stuart Schlanger specifically concluded that "there was no accidental bodily injury which caused or contributed to the insurer's [sic] demise." APP. at 41. The court is left, therefore, with the plaintiffs' simple argument that "[i]t would be just as easy to write in a report that . . . the 'thud' heard by the insured's wife was the insured slipping and falling in the bathroom and slamming his head onto the bathtub, as evidenced by the swelling to the head. Thus, causes [sic] of death, 'Accidental slipping in bathroom causing head trauma.'" Response at 5. But the plaintiffs' mere assertion, even if true, that the fall was just as likely to cause the Insured's death as a heart-attack cannot carry the day at the summary judgment stage. See *Zenith Radio Corporation*, 475 U.S. at 586 (the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" on a motion for summary judgment).[8] The plaintiffs have, therefore, failed to established a genuine issue of material fact that the fall or resulting head injuries proximately caused the Insured's

---

[8] Even if the court were to consider the photographs attached as Exhibit D showing the Insured's head injuries, it would not change the outcome of this inquiry. The images do not, standing alone, tend to demonstrate that the fall was sufficient to kill the insured. True, there is clear bruising on the Insured's forehead, but the injuries do not appear to be so obviously grave or fatal so as to justify, without more, an inference by the court that the head injuries caused the Insured's death.

death. Accordingly, the Insured's death did not result from an "injury" within the meaning of the Policy.

Even if the plaintiffs satisfied their initial burden to demonstrate that the fall proximately caused the Insured's death, the plaintiffs have not produced evidence sufficient to generate a genuine issue of fact that the fall was the sole cause of death – that is, that the fall did not occur as a the result of a heart-attack. As an initial matter, there is strong evidence supporting the conclusion that the Insured suffered a heart-attack before his fall. As noted above, the Certificate of Death issued by the State of New Mexico, medical investigator Dr. Cline-Parhamovich, and reviewing physician Dr. Schlanger each concluded that the Insured died as a result of "[a]therosclerotic and hypertensive cardiovascular disease" with "[m]orbid obesity" playing a significant contributing role. *See* APP. at 28, 35, 41. In the only evidence produced by either party directly addressing the relationship between the Insured's heart-attack and his fall, Dr. Schlanger concluded that the Insured "almost certainly fell after the cardiac arrest and was found down" and that "there was no accidental bodily injury which caused or contributed to the insurer's [sic] demise." *Id.* at 41.

Against this, the plaintiffs put forward two unpersuasive arguments. First, the plaintiffs assert that "there is no medical explanation for the finding the death was due to the causes listed except that the insured was clinically obese[,] and he had heart problems. In other words, there was no autopsy to confirm the cause of death

. . . ." Response at 4-5.  But the absence of an autopsy is non-dispositive of the issue for three reasons.  First, an autopsy is not always necessary to reliably determine the cause of death.  See *Parsons v. UNUM Life insurance Company of America*, 2019 WL 5213871 at * 4 (N.D. Miss. Oct. 16, 2016) ("For its part, however, this court does not believe that an exact medical cause of death was needed in order for defendant to reasonably conclude that a medical event was a contributing factor in [the insured's] death. . . . While an autopsy is a helpful source of information in a case of this nature, there are certain circumstances which are so clearly suggestive of a medical event that no after-the-fact medical investigation is required.").  Here, Mutual of Omaha has produced ample evidence that the Insured suffered a heart-attack and that it occurred before the fall; the plaintiffs only speculate that one did not occur.  Second, the Policy did not require an autopsy to be performed before the grant or denial of benefits.  Rather, the Policy only provides Mutual of Omaha's right to demand an autopsy.  APP. at 12 ("We have the right to have an *insured person* examined, at our expense, as often as reasonably necessary while a claim is pending.  We may also have an autopsy done, at our expense, unless prohibited by law.") (emphasis in original).  Finally, it is the *plaintiffs'* obligation – not Mutual of Omaha's – to demonstrate that the sole cause of death was the fall and resulting injuries.

The plaintiffs' second argument against the contributory effect of a heart-attack is that the emergency response report explicitly "presumed" that the cause of

death was a heart-attack. Response at 4. Again, there are several deficiencies in plaintiffs' argument. First, the use of the word "presumed" is commonplace where there is a reasonable certainty as to the cause of death, but no official autopsy was conducted. Second, even if true, this argument does not address the remaining pieces of evidence that Mutual of Omaha asserts which tend to demonstrate a heart attack. Accordingly, the plaintiffs cannot show that the fall was the sole cause of the Insured's death. Thus, the Insured's death was not the result of an "injury" within the meaning of the Policy.

### b. Disease Exception

Because the plaintiffs failed to demonstrate that the Insured died as a result of an "injury," the court need not address Mutual of Omaha's alternative argument that the disease exception applies to bar coverage.

Mutual of Omaha is entitled to summary judgment on the breach of contract claim.

### 3. Prompt Payment Act

The Prompt Payment Act provides "that an insurer, who is 'liable for a claim under an insurance policy' and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for 'interest on the amount of the claim at the rate of eighteen percent a year as damages, together with reasonable attorney's fees.'" *Lama*

*Homes, Inc. v. Mid-Continent Casualty Company*, 242 S.W.3d 1, 16 (Tex. 2007) (quoting Tex. Ins. Code § 542.060(a)).  Because the court finds that Mutual of Omaha has not breached the contract, it is not liable for additional damages under the Prompt Payment Act.  Summary judgment for Mutual of Omaha is granted on this claim.

### III.  CONCLUSION

For the reasons set forth above, Mutual of Omaha's motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendant.


**SO ORDERED**.

July 13, 2021.

_____
A. JOE FISH
Senior United States District Judge